J. W. BOOTH, Appellant, v. S. C. BRADFORD, Appellee.

**Trustees:** COMPENSATION FOR IMPROVEMENTS. Under a trust agreement giving the trustee full power to dispose of the property and handle it as his own, the proceeds to be used to pay specific debts of the *cestui que* trust, and to repay the trustee any money or expenses required to protect and dispose of the property, the trustee will not be allowed compensation for permanent improvements, nor for repairs not shown to be necessary to the preservation of the estate.

ENHANCED VALUE. Where a *cestui que* trust following trust property claimed land exchanged therefore, the trustee was entitled to credit (no fraud being shown), for the cost of a building transferred in the trade, though it went in at an unduly high price, and not merely to the actual value of the building at the time, since the enhanced value, if fictitious, was represented in the land, and would redound to plaintiff.

COMMISSION AND INTEREST: *Constructive fraud.* Under a trust agreement providing for reimbursement for moneys expended in caring for property, with interest thereon, and for compensation for sale thereof, a trustee made large advances. A settlement of the trust was afterwards made, which was attacked as fraudulent. The trustee offered to arbitrate the matter. He did not deny the trust, but insisted that the settlement was binding. The *cestui que* trust obtained a decree impressing land with the trust, under which he would derive large profits by reason of the trustee's advantageous trades. The trustee's fraud was constructive rather than actual. *Held*, that the trustee was entitled to commissions and interest.

*Interest received.* A trustee who is allowed interest on advancements should be charged interest on amounts received by him.

COSTS. A trustee defending a successful suit by his *cestui que* trust to declare a trust in his property must pay the costs thereof.

**Settlement:** AVOIDED FOR BREACH OF TRUST. Where a trustee procured his *cestui que* trust to make a deed to certain land in carrying out an exchange, together with a settlement in full of his accounts as trustee, his concealment of the price at which the land was being put in, and what was to be received in exchange, so as to derive a personal benefit therefrom, is a breach of trust sufficient to vitiate the settlement.

**Venue:** WHAT IS ACTION TO RECOVER REAL PROPERTY: *Jurisdiction of district court.* Where defendant was sought to be held as trustee of land in one county, and an accounting was also prayed, and his answer pleaded that he purchased such land with his own funds, independent of any trust relationship, the fact that both he and the plaintiff were residents of another county did not deprive the local district court of jurisdiction: Code, section 3491, providing that actions for the recovery of real property shall be brought where it is situated.

*Appeal from Guthrie District Court.*—HON. J. H. APPLEGATE, Judge.

THURSDAY, OCTOBER 10, 1901.

SUIT in equity to compel defendant to account for money and property coming into his hands as trustee. The trial court stated the account between the parties. Both appeal. As plaintiff first gave notice, he will be called "appellant."—*Modified* and *affirmed.*

*I. S. Struble* and *J. D. Brown* for appellant.

*Lot Thomas* and *A. D. Bailie* for appellee.

DEEMER, J.—In the early part of the year 1897 plaintiff deeded to defendant, as trustee, a half section of land in Buena Vista county, Iowa; and at the same time the parties entered into a written contract which set forth the objects and purposes of the conveyance, and, among other things, provided: "The said S.

C. Bradford hereby accepts said trust and deed upon the following conditions: First, that he may have full power to sell the same, or trade or exchange the same for other property, and handle as though his own, and the proceeds to be used in the payment of—First, the record liens against the property above described; second, the payment of a certain mortgage of $2,600 now owned by B. F. Felt, of Galena, Illinois, which mortgage covers 120 acres of land in Guthrie county, Iowa, and which debt the said J. W. and Mary Booth hereby acknowledge their liability to pay. It is understood, however, that only such amount of the proceeds shall be applied towards the payment of the $2,600 debt above described as is necessary after the full amount has been realized out of the Guthrie county land above mentioned; third, the payment of a reasonable and customary commission for selling or trading or disposing of said land or proceeds to said S. C. Bradford, and to repay him any money or expenses that he may have to advance in his efforts to protect and dispose of said property, with interest thereon at eight per cent." The Guthrie county land therein referred to was incumbered by mortgage to the amount of $1,800, on which interest was due and unpaid, and the same had been sold for taxes. On May 25, 1897, defendant made an exchange of the Buena Vista lands with one Windle for a stock of goods and a store building at Mt. Morris, Ill.; said exchange being made on the basis of $35 per acre for the land, and $2,750 for the store building; the goods to be taken at invoice price. After making sale of part of the goods in Illinois, the remainder was shipped to Newell, Iowa, and an one-half interest sold to J. E. Metcalf. These goods, with some additional stock, were placed in the store building in the town of Newell owned by Metcalf, and the business under the firm name of J. E. Metcalf & Co., was carried on until it was traded to one Haman for certain real estate in this state and in the state of Minnesota. The action, as we have said, is

for an accounting, and was commenced before the trade with Haman. Plaintiff prays that he be decreed to be the owner of the Guthrie county land, the Mt. Morris store building, and the land received from Haman. Defendant pleads a purchase of the trust property and a settlement and a cancellation of the trust agreement prior to the exchange with Windle.

Plaintiff and defendant are both residents of Buena Vista county, and defendant moved for a change of place of trial to his home county. This motion was overruled because the petition disclosed the fact that defendant was sought to be held as trustee of the Guthrie county land. One Dorris, who was in possession of the Guthrie county land, and who was a resident of Guthrie county, was also made a party defendant. But, as he filed a disclaimer, the action was not prosecuted as to him. Defendant raised the question of jurisdiction in his answer, by pleading that he purchased the Guthrie county land with his own funds, and that the purchase had no relation to the trust. No complaint is now made of the ruling on the motion for change of place of trial, but it is insisted that the district court of Guthrie county had no jurisdiction of the accounting proceedings. As plaintiff asked that he be decreed the owner of the Guthrie county land, he made a *prima facie* case of jurisdiction. Code, section 3491. Section 3504 does not apply to such a case, for the action is *in rem*, or in the nature of an action *in rem;* and if it related to no other matter than Guthrie county land, and it were shown on the trial that this land was in no manner involved in the trust, doubtless the court would have no jurisdiction. *Orcutt v. Hanson,* 71 Iowa, 514. But as there were also other matters involved, which do not partake of an action *in rem,* the court was not without jurisdiction, even though it found that the Guthrie county land was not subject to the trust. We are not to be understood as holding that plaintiff might make unfounded allegations with reference to the Guthrie

county lands for the purpose of giving the district court of that county jurisdiction of a purely personal action. It is enough for present purposes to say that the Guthrie county court was not without jurisdiction.

II. The relation of trustee and *cestui que* trust between the parties down to the time of the exchange for the Mt. Morris property is conceded. Indeed, the trust relation is created by express contract, and is not subject to dispute. But on June 8, 1897, the parties entered into a stipulation of settlement, which, among other things, contained the following recitals: "Whereas, on the 11th day of February, A. D. 1897, the said J. W. Booth and Mary Booth entered into a contract and stipulation of trust with the said S. C. Bradford whereby said J. W. Booth and Mary Booth deeded to the said S. C. Bradford the west ½ of section 25, township 93, range 36 west, 5th P. M., Buena Vista county, Ia., as trustee, the contract and agreement being attached hereto and made a part of this stipulation of settlement; and whereas, the said S. C. Bradford has sold lands in full accordance with said trust between the parties, the proceeds having been in full compliance with said agreement and trust, in satisfaction of the obligations of the said J. W. Booth and Mary Booth, as set out in said agreement: Now, therefore, we, the said John W. Booth and Mary F. Booth, hereby acknowledge receipt of full and complete payment of the proceeds of the sale of said lands above described, and fully discharge the said S. C. Bradford from said trust, hereby relinquishing and releasing all claim, right, or title of any. and all property passing through the hands of the said Bradford as trustee, the intention being to absolve him from all further obligations, either as trustee or individually, and this receipt shall operate as a full settlement of all matters between the parties hereto. J. W. Booth, Mary F. Booth." Prior to the making of the exchange defendant also procured a quitclaim deed from plaintiff and wife to Windle for the

property given in exchange for the Illinois property, on a statement that it was necessary to effectuate the trade. Plaintiff contends that the deed and agreement of settlement were obtained through fraud, and that defendant did not make a full, fair, and complete statement as to the condition of the trust estate at the time he received this agreement. A careful review of the evidence convinces us that defendant did not make full disclosure of the facts regarding the exchange with Windle; that he concealed the price at which the land was being put in, and did not state in full what was to be received in exchange. The rule with reference to such settlements and releases is well understood. It is the duty of trustees in securing a release from their *cestui que* trust to put their *cestui* in possession of a full and true statement of the affairs; and the law will discountenance all but the most open and satisfactory dealings between such parties. *Uberrima fides* is the requirement in such transactions. *Barton v. Fuson*, 81 Iowa, 575; *Pearson v. Taylor,* 37 Iowa, 331. A trustee cannot derive any personal benefit from the use of trust funds or from his position as trustee, and his acts in this direction will be closely scrutinized, and all gains will inure to the benefit of the *cestui que* trust. *Read v. Howe,* 39 Iowa, 553; 2 Beach, Trusts, section 515. Applying these rules to the facts before us, it is clear that the settlement in question should not be permitted to stand. This settlement out of the way, there is no doubt that plaintiff may follow the proceeds of his property, and have a trust impressed thereon, except it be in the hands of innocent purchasers for value; and in such case the trustee is liable for the value of the property. With the issue of settlement out, stating of the account between the parties is the main one in the case. Before proceeding to that, it is essential that we know more of the facts, and consider some other propositions of law that are incidentally involved. At the time of the exchange for the Mt. Morris property the Buena Vista county land was not worth

to exceed $25 per acre, and the property received in exchange therefor did not exceed $6,200 in value, but the deal was made on the basis heretofore stated. In order to accomplish it, defendant was compelled to voluntarily advance money (about $2,200), and to take care of certain of plaintiff's debts and obligations, including the mortgage on the Guthrie county land. This last-mentioned tract was not worth to exceed $4,800. The manifest purpose of the trust was to enable the beneficiary to pay his debts, and to save whatever could be secured over and above his obligations. The defendant endeavored to sell the Buena Vista land for $23 per acre, but was unable to do so, and it required the best of management to procure enough from the trust property to liquidate plaintiff's debts. Plaintiff knew that defendant was endeavoring to negotiate the exchange with Windle, but was not informed as to the terms of the trade. He did, of course, know of his own situation, and that in all human probability but little could be realized over and above the amount of his debts. With this situation in mind, plaintiff and defendant agreed that defendant was to exchange the land practically as his own. He (defendant) was to adjust all incumbrances against the land, pay all unsecured debts, except two, which were specifically exempted, and relieve plaintiff of his liability on the $2,600 mortgage covering the Guthrie county land. Plaintiff contends, however, that, because of defendant's fraud in procuring the agreement and settlement without disclosing all the facts, he (defendant) is not entitled to anything for his services, for money advanced, or for improvements made. Plaintiff is, of course, entitled to have the proceeds of the trust property, title to which is now in the defendant, declared to be in trust for his benefit. This includes 320 acres of land in Palo Alto county, 120 acres in Guthrie county, the store building in Mt. Morris, Ill., and a contract for the purchase of 160 acres of land in Minnesota. The trial court rendered such a decree, and as plaintiff is content therewith, and as we find

defendant has no ground for complaint with reference there-
to, such decree must stand.

Defendant also received other money and property for
which he should account. We find these to be as follows:
He received from a loan made on the Mt. Morris property
$1,500; from goods sold while the stock was at Mt. Morris,
$1,352.10; received from rent of the Mt. Morris store
building, $424.80 (this is something more than allowed by
the trial court, but we think it the proper amount); rent of
Guthrie county land, $335; cash received from the Newell
business accounts at close of business, $185.05; rents from
Palo Alto county land, $763.56; error in interest on Haman
deal, $27.40; goods from store, $56.50; proceeds of mort-
gage on Palo Alto county land, $1,450. These items are con-
ceded by both parties, but the amounts of some of them are in
dispute. Plaintiff demands interest on these sums from the
time they were collected. Of this we will have more to say
in the future. As to rent of the Mt. Morris property, de-
fendant had actually received down to August 1, 1898,
$194.80; but as he had the same rented at the rate of $230
per year, and did not in any manner account for these rents,
he should have been charged with this additional $230, as the
decree in the lower court was rendered July 31, 1899. The
rent on the Guthrie county land should be treated in the same
manner. The rent for Palo Alto land includes some items
allowed a tenant that are not properly accounted for, as we
will hereafter show. The Palo Alto land was incumbered
by mortgage for $800 when it was obtained by defendant.
Thereafter Bradford placed a new mortgage thereon for
$2,250, and received the benefit of the proceeds. He should
be charged with the difference. The total of these debits,
exclusive of interest, is $6,094.41. To this should be added
some small items in the nature of rebates allowed by Windle
amounting to $24.25, making an aggregate of $6,118.66.
This leaves the interest account and two other items for fu-
ture consideration. Plaintiff admits that defendant is en-

titled to credits aggregating $12,109.25, while defendant insists that they should not be less than $14,825.09. The trial court found the amount to be $14,760.27. The difference between the parties is due to claims for compensation, interest on moneys advanced, allowance for improvements, and the difference between the actual value of the Newell store building and what it was put in at in the trade for the Palo Alto county land and the contract for the Minnesota land.

A trustee cannot ordinarily make improvements, and charge the cost thereof to the beneficiary, unless clearly authorized by the instrument creating the trust. *Green v. Winter,* 1 Johns. Ch. 27 (7 Am. Dec. 475) ; *Pratt v. Thornton,* 28 Me. 355 (48 Am. Dec. 492) ; *Wykoff v. Wykoff,* 3 Watts & S. 481. He will, however, be allowed for repairs, when such repairs are necessary to the preservation of the estate. *Parsons v. Winslow,* 16 Mass. 361. We do not think the trust agreement contemplated the making of permanent improvements, and are constrained to hold that defendant has not made such a showing with reference to repairs as that he should be allowed therefor. This will eliminate from the credit account claimed by him the sum of $245.41. As to the store building in Newell: Metcalf owned this building when the Mt. Morris stock of goods was brought to this state. They were placed in this building, and Metcalf bought a half interest in the stock, paying $1,857 therefor. Thereafter each of the parties put in $361.68 in cash. The trade with Haman was made in February of the year 1899. In that trade the stock of goods and also the store building were given for a part of the lands now in controversy. The store building was valued in this trade at $3,500, although it cost defendant but $3,000. It belonged, as we have said, to Metcalf, and was not worth at that time to exceed $1,500. Plaintiff claims that he should only be charged with the value of the building, and not what it was put in at on the trade or what it cost defendant. As he (plaintiff) is seeking to hold the land ac-

quired in exchange for the building, and as there is no evidence of any fraud in the transaction, we see no reason or justice in allowing defendant nothing but the actual value of this building. It did not at any time belong to defendant, and plaintiff never had any interest therein. If it was put in at a fictitious value, the property received in exchange was either of that much greater value than it would have been had the store building been put in at its true worth, or the land was overvalued. In any event there is no showing that plaintiff suffered any prejudice thereby. Of course, if the store building was overvalued for the purpose of absorbing the goods received by defendant from Windle, a different question would arise. But there is no such showing. In dealing with this matter we have assumed that defendant took title to the Haman land directly from Haman. That is not true, as a matter of fact, but for present purposes we treat the transaction as stated. Eventually defendant did obtain title, although it came through Metcalf, but there is no use of incumbering the record with a statement of that somewhat complicated transaction. And here it may be well to say that the amount paid by Metcalf for his interest in the stock of goods is a matter of dispute. It is true that defendant received from Metcalf $1,857 for an one-half interest in the stock, but when the partnership transactions were settled this amount was returned to Metcalf, or allowed him in the settlement, and should not be counted either for or against defendant. Althought he sold an half interest to Metcalf, he in effect repurchased from him; and the land which plaintiff now seeks to recover, represents the entire value of the stock. Defendant should have credit for $3,000 represented by the Newell store building belonging to Metcalf. The manner in which defendant acquired Metcalf's rights need not be stated.

The more troublesome questions in the case relates to defendant's right to compensation for services rendered; and

to interest on money advanced. He advanced in cash and on account of liabilities assumed about $3,500, the greater part of which was furnished about the time of the trade for the Windle property, and he also paid out various sums in conducting the business in Mt. Morris and Newell. The trial court allowed him by way of interest on these advancements $917.72. Defendant was also allowed $470 as compensation for his services. The agreement creating the trust provides for compensation for services rendered, and also provides for payment of interest on money advanced. The usual commission for making the exchange for the Mt. Morris property, and interest on moneys advanced should be allowed, unless defendant has been guilty of such misconduct as forfeits his right thereto. He is entitled to money paid out for expenses, and to the return of all moneys actually advanced, in any event. Generally speaking, a trustee who neglects his duties, who is guilty of bad faith, or who violates his obligations, forfeits his right to compensation and to interest. *Cook v. Lowry,* 95 N. Y. 103; *Henderson v. Sherman,* 47 Mich. 267 (11 N. W. Rep. 153); *Barney v. Saunders,* 16 How. 535 (14 L. Ed. 1047); *In re Greenfield's Estate,* 24 Pa. 232. But this is not an inflexible rule. If the irregularities, complained of are trival or have done no harm, compensation may be allowed. *Myers' Appeal,* 62 Pa. 104. And the allowance of compensation in any case rests in the sound discretion of the court. *Gibson's Case,* 1 Bland, 138 (17 Am.Dec. 257); *Turner v. Turner,* 44 Ark. 25; *Tucker v. McDermott,* 2 Redf. Sur. 312; *Vanderhayden v. Vanderhayden,* 2 Paige, 287 (21 Am. Dec. 86); *King v. Talbot,* 40 N. Y. 76; *Diffenderffer v. Winder,* 3 Gill & J. 341. Each case must be determined largely on its own peculiar facts, due weight being given by the appellate court to the findings of the lower tribunal. If we were satisfied that defendant was guilty of actual fraud or that he was guilty of intentional bad faith, no compensation for services or interest allowance would be made. But we are not

so satisfied. Indeed, we think the case one of constructive rather than actual fraud. Plaintiff will derive large profits from the transaction, and defendant, while insisting that the settlements and agreements made with plaintiff were legal and binding, offered to arbitrate the matter, and, when answering plaintiff's petition, did not deny the trust *in toto*. In that answer he pleaded that if the court found him to be a trustee he should be allowed his expenditures, etc., and in introducing his evidence concealed nothing. In view of these facts, and the further fact that plaintiff has not been prejudiced by defendant's conduct, unless the fact that he was forced to bring suit may be considered prejudicial, we have concluded to allow commissions and interest. For his fault in defending the suit, defendant must pay the ordinary and usual penalty to wit, costs and his attorney's fees. The item for repairs and improvements should be deducted from the allowance made to defendant. As defendant was allowed interest on advancements, he should be charged with interest on the amounts received by him. Computed from the most reliable data we have, this interest charge is $143.07, which should also be deducted from the credit items allowed to defendant. The trial court found the total credits to be $14,760.27. We deduct from this $388.48, leaving a balance of $14,371.79. Subtracting from this the debit account of $6,118.66, we have the amount due from plaintiff to defendant August 1, 1899, $8,253.13, which should draw interest at 8 per cent. from that date. This is but a few hundred dollars more than was allowed by the trial court, but it may be well in this connection to call attention to an error in addition of $1,000 in the computation made by the trial court in its decree. The total debit charges in the decree aggregate but $5,743.63, instead of $6,743.63, as therein stated. In order that the matter may be fully understood, we really charge defendant with $375.03 more than did the trial court, although on account of the error in addition it appears to be

less, and we credit him with $388.48 less. We have now disposed of every item save one, and that is a claim for the proceeds of some additional sales while the stock was at Mt. Morris, amounting to $150. We do not think this is sufficiently established by the evidence, and it is therefore disallowed.

We have gone through this voluminous record with the most painstaking care, and while the result may not be absolutely correct, on account of the mass of figures and ofttimes unreliable data, it is as nearly so as may well be expected under all the circumstances. On account of the error of the trial court hitherto mentioned, the result does not seem to differ materially from that arrived at by the court below. The time allowed for redemption was inadequate, however. Plaintiff will be given 90 days from the filing of this opinion within which to pay the amount found due the defendant.

The decree, except as modified, will be affirmed, and each party will pay one-half the costs of this appeal.—MODIFIED and AFFIRMED.