WILLIAM G. CLARKE, APPELLANT, v. MARY E. LYON ET AL., APPELLEES.

FILED NOVEMBER 6, 1908.  No. 15,354.

1. **Divorce:** CUSTODY OF CHILDREN: JURISDICTION. Where the court of a sister state has granted a divorce and awarded the temporary custody of the children to the mother, who becomes a resident of this state and dies here, leaving such children in the hands of relatives who are appointed guardians by the county court, the fact that the court rendering such divorce retained jurisdic-

tion for the purpose of making further orders does not deprive the courts of this state of jurisdiction to determine the merits of a controversy between the divorced father and such guardians for the custody of such children, especially where the court rendering the divorce has expressly refused to itself determine the material question in issue.

2. ——: ——: DECREE: CONCLUSIVENESS. Where a court granting a divorce, without finding the father unfit, temporarily awards the custody of minor children to the mother, such decree does not deprive the father of the natural right to the custody of such children against any person except the mother; and, upon her death, such right ceases to be affected by such award.

3. Guardian and Ward: DECREE: CONCLUSIVENESS. The appointment of a guardian by a county court is not conclusive as against a parent's right to the custody of his children, unless it appears that he had notice of the proceeding, and that the question of his competency and suitability was adjudicated.

4. Parent and Child: CUSTODY. The unfitness which deprives a parent of the right to the custody of his children must be positive, and not comparative, and the mere fact that the children would be better nurtured or cared for by a stranger is not sufficient to deprive the parent of his right to their custody.

5. ——: ——. While the unfitness which deprives a parent of his natural right to the custody of his children must be positive, and not comparative, the degree thereof must be considered in relation to the attending circumstances, such as the concern he has shown for them in the past, the suitability of his domestic surroundings to receive them, and the question of their general welfare.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Halleck F. Rose* and *Carlos J. Ward,* for appellant.

*F. A. Boehmer, I. P. Hewitt, G. A. Adams* and *L. F. Mason, contra.*

CALKINS, C.

This was a petition for a writ of habeas corpus by William G. Clarke to obtain possession of his two minor children. The petitioner was married to Anna Carpenter Lyon in 1885, in the state of Illinois, where they lived to-

gether as husband and wife until the year 1899, when they separated. In 1901 the petitioner began a suit in the circuit court for Cook county, Illinois, against his wife, Anna, for a divorce on the ground of desertion. In this suit the wife filed an answer and cross-bill, praying for a divorce from her husband on the ground of desertion on his part. A decree was entered granting her a divorce upon such cross-bill, and she was awarded, until the further order of the court, the custody of the two surviving children of said marriage, both boys, Holly L., born March 17, 1887, and Caryl C., born May 18, 1898.

It seems that the wife, Anna, was possessed of an estate in her own right sufficient for the support of herself and children; and, beyond the husband's releasing any marital claims to which he was entitled in her lands, no adjudication of property rights was made between the parties. The wife, with the two boys, removed to Lincoln, in this state, where she resided until her death, December 21, 1906. From the time of the divorce until her death she supported herself and the two boys without any assistance from their father. The petitioner very soon after the rendition of the decree of divorce married a second wife, Adelaide, with whom he lived until about six months before the commencement of this proceeding, and by whom he had a son, Myron, who was at the time of the taking of the evidence in this case about four years old. The respondent Lyon and the wife of the respondent Wood were half sisters of Anna Carpenter Clarke; and, while the latter left no will, she upon her death bed expressed the wish that Mr. and Mrs. Wood should have the custody of the children. The respondent Lyon, who, it is claimed, resided in Waukegan, Illinois, came to Lincoln about the time of the death of the mother, and, together with Mr. and Mrs. Wood, took charge of the children. On the 4th day of January, 1907, the petitioner obtained an order in the original divorce suit from the circuit court for Cook county, Illinois, awarding him the permanent custody and care of said children. Upon the intervention of certain

relatives of the children to set aside this order, the court on the 11th day of February, 1907, entered an order in said case vacating the order awarding the custody of the children to their mother, and granting the father leave to take any proper steps in any court of competent jurisdiction to obtain their custody; the court expressly declining to determine whether the petitioner was or was not a fit person to have the custody of said children as against the persons with whom they were then domiciled. Upon obtaining the order of January 4, 1907, the petitioner immediately notified the respondents by letter of the making thereof, and they on January 7 filed a petition in the county court of Lancaster county, and obtained an order appointing themselves guardians of the person and estate of the said children. No notice of the proceedings before the county judge was given the father.

On February 20, 1907, the petitioner began this proceeding, his application setting forth his relationship to the children, the rendition of the decree of divorce, the subsequent modification thereof, and alleging that the said children were unlawfully restrained of their liberty. For answer to this application the respondents alleged their appointment as guardians, asserted their competency to properly discharge such trust, and charged that the petitioner "is not a suitable person to take care of and have the custody of said children, and that the welfare of said children would be better preserved if they were not placed in his care and custody." They added, as special reasons for his unfitness, that he was "possessed of a quarrelsome character and violent temper, and that he was addicted to the excessive use of intoxicating liquors." There was a trial to the court upon the issues so tendered, and the writ was denied, from which finding and judgment of the court the petitioner appeals.

1. The petitioner contends that the court where the divorce suit was tried maintains jurisdiction of the parties for the purpose of changing the decree as to the custody of the children, and that they remain the wards

of the court, so that, upon the death of the party to whom their custody was awarded, that court may grant custody to the surviving parent. This may be true where the parties interested remain within the jurisdiction of the court granting the divorce, but it is not applicable to the facts in this case. The mother lawfully brought the children to this state, and lawfully acquired a residence here. Upon her death, the children remain within this jurisdiction, whose courts alone have power to enforce an order as to their custody; and, while such courts should give full faith and credit to the judgment of the circuit court for Cook county, we do not think they are required to enforce the order of January 4, 1907. This order was made after the death of the mother, and without any notice to the persons with whom the children were then domiciled. It is apparent that the court regarded the order as made without jurisdiction and void; for, when on February 11 its attention was called to the fact that the mother was dead and the children were not within its jurisdiction, it, acting as though the order of January 4 had never been made, proceeded to set aside the order awarding the custody of the children to the mother, and gave the father leave to take proper legal steps in any court of competent jurisdiction to obtain their custody and control, expressly declining to pass upon the question of his fitness for such custody. It is plain that the court did not regard the order of January 4 as in force; and, if it were in force up to that time, it was modified by the order of February 11.

2. The respondents contend that the award of the custody of the children to the mother gave her control of them not only during her life, but invested her with a power to dispose of them at her death. This contention cannot be maintained. There was no finding that the father was unfit to have the custody of these children; and the award of such custody to the mother until the further order of the court was only a finding that, as between the father and mother, the interests of the chil-

dren would be best served by committing them to the care of the mother for the time being. Her death not only removes the reason for this award of custody, but renders its execution impossible, so that the right of the father to the custody of the children is no longer affected by such decree.

3. It is claimed on behalf of the respondents that the order appointing them guardians of the minor children was an adjudication of the father's right to the custody of their persons. Whatever may be the effect of this order so far as the estate of the minor children is concerned, it would not of itself give the right of custody of the persons of the children against a parent who had no notice and whose rights were not adjudicated. The question of his competence and suitability would remain to be adjudicated. *In re Thomsen,* 1 Neb. (Unof.) 751.

4. Upon the question of the fitness of the father, the finding of the district court was that the petitioner could not "provide for said children or rear them in as proper and fitting a manner as can the respondents." The oldest boy having been born in March, 1887, has attained his majority, and this controversy no longer concerns him. It is conceded that the respondents are so situated as to give excellent care to the boy Caryl, now ten years old, and no criticism is made of the manner in which he is being nurtured and educated, nor of the environment in which he is placed. In fact it is tacitly admitted that his present surroundings are better than his father is able to offer; but it is earnestly insisted that the disqualification which deprives a parent of the custody of his child must be of a positive, and not of a comparative character. Upon this question we can do no better than to quote from the opinion of IRVINE, C., in the case of *Norval v. Zinsmaster,* 57 Neb. 158. He there says: "We are aware that this court has several times asserted that in such controversies as the present the order should be made with sole reference to the best interests of the child. But this has been broad language applied to

special cases. The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. The statute declares and nature demands that the right shall be in the parent, unless the parent be affirmatively unfit. The statute does not make the judges the guardians of all the children in the state, with power to take them from their parents, so long as the latter discharge their duties to the best of their ability, and give them to strangers because such strangers may be better able to provide what is already well provided. If that were the law, it would be soon changed by revolution, if necessary. In *Sturtevant v. State,* 15 Neb. 459, the child was only a few months old, and the custody was taken from the father because he was unable personally to discharge duties which the custody imposed. *Giles v. Giles,* 30 Neb. 624, was a controversy between father and mother, where the natural rights were equal. *State v. Schroeder,* 37 Neb. 571, and *Schroeder v. State,* 41 Neb. 745, presented a case of affirmative unfitness of the father and of abandonment of the child."

5. The respondents insist that the petitioner is an unsuitable and unfit person to have the care of this child, and that the evidence not only would have justified the district court in so finding, but that the same is of such a character as to sustain no other conclusion. It appears that at the time of the petitioner's marriage with his wife, Anna, he was a clergyman of the Presbyterian church. He afterwards served for several years as pastor of the Campbell Park Presbyterian church in Chicago, and from there went to the People's Institute, which at that time seems to have been the nucleus of a social settlement under the patronage of Bishop Fallows. This enterprise did not long sustain its benevolent character, and the petitioner in some way became the owner of the property in which it was carried on, and thereafter devoted the same to secular uses. The building contained a theater, a hotel, a dance hall, and several stores which

were rented for various purposes, including a saloon and restaurant. The petitioner occupied rooms in the hotel part of this building, and his business consisted in managing the property. He still resided there at the time of the beginning of this proceeding; but about the 20th of March, 1907, he rented a house on Irving avenue, and installed his married sister, whom he brought from Louisiana for that purpose, as housekeeper. At this time he was separated from his wife, Adelaide, and there was pending a suit by her to obtain a divorce on the ground of habitual drunkenness. On the whole, it may be conceded that the petitioner had a suitable residence and was of sufficient financial ability to undertake the support of his children.

Upon the question of his intemperance, without citing the evidence at large, it fully sustains the charge that the petitioner became so addicted to the use of intoxicating liquors as to greatly shock and distress his friends who had known him while officiating as a clergyman; and, after making due allowance for the special aversion which such conduct in an ex-clergyman would inspire, we are constrained to say that it went so far that it would have compromised the character of one who had always been engaged in secular pursuits. The petitioner did not himself testify as a witness, but there is found in the record his answer to the bill of his wife, Adelaide, for a divorce on the ground of habitual drunkenness. In that answer, verified by him on the 29th day of October, 1906, he made the old plea that "he was tempted of the woman." He says that before he associated with her he was personally and professionally opposed on principle to the use of intoxicating liquors; that after coming under her influence he indulged in their moderate use; that he never drank to the extent of being unfit to attend to business; and that, when he drank on rare occasions more liquor "than was wise, it was almost invariably under the sting of her abuse." This answer, read in the light of the positive evidence of witnesses as to his drinking

habits, though perhaps insufficient to establish the existence of habitual drunkenness in the strictest of all the varying shades of interpretation applied by the courts to that term, yet indicates a considerable deterioration in the moral force and character of the petitioner, which to a degree unfits him for the care and nurture of his child.

During the time the children were in the custody of the mother he does not appear to have contributed to their maintenance, nor to have given them any parental attention. He was compelled to surrender their custody, and, the mother being able to support them, the fact that he did not voluntarily assist her should not of itself be taken as evidence of a want of affection on his part; but there are many attentions which a loving father may and usually does render to children beyond his custody and control, and these appear to have been entirely lacking in this case, which indicates a slight degree of affection and a want of parental care for these children on the part of the petitioner. As we have already seen, the unfitness of the parent which deprives him of the absolute right of the custody of children must be positive, and not comparative; but this does not mean that the degree of unfitness may not be considered in connection with all the other circumstances of the case. And, so considering the present situation of the child, the father's former indifference to him, his intemperate habits, and the unsettled state of his domestic affairs, we cannot say the district court erred in denying the writ prayed for.

As this conclusion is partially based upon the petitioner's intemperate habits and the disturbed state of his domestic atmosphere, both of which are susceptible of amendment and improvement, it is proper to say that the dismissal of the writ is not a bar to a future application of like character, should changed conditions justify a different conclusion.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.