SUSIE P. TURNER et al., Appellants, v. W. L. RYAN, Trustee, et al., Appellees.

No. 43735.

MARCH 16, 1937.

Chandler Woodbridge, for appellants.

F. G. Ryan, for appellee, W. L. Ryan.

F. G. Ryan, attorney pro se.

Marion D. Woods, for appellee, Marion D. Woods.

HAMILTON, J.—The legal questions presented for our determination arise out of the administration of a testamentary trust created by the will of Mary A. Turner, deceased. Susie P. Turner, the mentally deficient daughter of testatrix, is the cestui que trust. She and her guardian, Edmund Nichols, in this record are designated as appellants. W. L. Ryan, an attorney, the trustee, is one of the appellees and cross-appellants. Marion D. Woods, trustee under the will of Mary A. Turner, is also appellee. The record is quite voluminous. After brushing aside immaterial matter, the issues tried and passed upon are comparatively simple. A brief historical statement will better enable us to approach the legal questions.

Dr. M. P. Turner, one of the early pioneers in the development and progress of the city of Des Moines, died about the year 1898. By his will he left his entire estate to his wife, Mary A. Turner, naming her executrix. The large estate left to Mrs. Turner included several residence and business properties, and she, feeling the need of assistance in managing these properties, after the closing of the estate, selected three persons in whom she undoubtedly placed trust and confidence, to act as her trustees and look after her property. These trustees served until eighteen months before her death. Mr. W. L. Ryan, one of the trustees, being an attorney, actively managed said properties. Mary A. Turner died testate September 15, 1910, a resident of the city of Des Moines, leaving two daughters, Susie P. Turner and Emma Turner Watson.

The will bears date of May 7, 1909. After providing in Item One for the payment of all just debts and funeral expenses and naming Samuel Merrill of Des Moines as executor, it recites:

"Item Two. Subject to charges for the above purpose I hereby transfer and convey to Samuel Merrill as Trustee aforesaid all my real and personal property wherever situated to be held by him in trust for the objects and purposes hereinafter stated—the said trustee, in the execution of such trust to be under and subject to the advise, direction and control of the District Court of Polk County, Iowa.

"Item Three: I will and direct that my said trustee and any other trustee who may succeed him shall not in any way dispose of or sell Lots Five (5) and Six (6) in Block B in Commissioner's Addition to Fort Des Moines, Iowa, now included in and forming a part of the City of Des Moines, Iowa, the same being in the southeast angle made by the intersection of Seventh Street and Grand Avenue (except as the same is hereinafter permitted to be mortgaged) during the lifetime of either of my children, to-wit: Emma Turner, Now Emma Watson, and Susie Turner, nor during the lifetime of any child or children born to either of my said daughters before my death, said trustee with the approval of said District Court first had may encumber said Lots Five (5) and Six (6) for the purpose of preserving the same from waste and for the purpose of placing improvements thereon —the encumbrance for improvements not to exceed Twenty-five Thousand Dollars ($25,000.00). (Here follow directions as to how the income from this specific property is to be applied, and then states:) The net income of said Lots 5 and 6 after providing for said expenditures shall be paid quarterly in equal shares to my daughters Emma Watson and Susie Turner, as long as they both live. (The remainder of Item 3 is not material to this controversy.)

"Item Four: I will and direct that at the time of my death my property, except Lots 5 and 6 * * * be sold to the highest bidder under the direction and approval of said District Court either for cash or for one-half cash and the balance on time as may seem to said Court most advantageous and that the proceeds of such sale and such money as I may have at my death shall be distributed after payment of my debts, etc. as above provided, between my daughters share and share alike. (The remainder of Item 4 is not material to this controversy.) * * *

"Item Six: I hereby appoint and constitute W. L. Ryan of the City of Des Moines, Iowa, Trustee for all property to which Susie Turner shall be entitled under the provisions of this will

and direct that such property shall be delivered to him in trust for said Susie Turner and that as such Trustee he receipt for the same and that under the direction and approval of the District Court of Polk County, Iowa, he shall manage and control the same for and on behalf of said Susie Turner and her children, if she have any, and her grandchildren, if any, and that he disburse the proceeds and income therefrom and act for her and her children if any, and grandchildren, if any, in any division of the property made under the provisions of this will; and upon such division of her said property my trustees, Samuel Merrill, hereinbefore named shall convey and pay accordingly, one-half to Emma Watson and the other half to the Trustee named in Item Six of this will, who shall hold the same in trust for Susie Turner, etc. (Remainder of Item 6 is not material.)

"Item Seven. I hereby request that the trustees named in this will and their successors in such trust as well as the said Court and all parties interested in the bequests herein may with fidelity and care see to the preservation of said fund and property bequeathed and the application and distribution thereof, to the end that the objects and purposes of the maker of this will be not defeated."

In November, 1907, a codicil was added. There is nothing in the codicil material to the matters involved in this litigation.

Susie Turner was not a normally developed child. Her mentality is given in the record as that of a child of from three to twelve years of age. She is now a woman 64 years of age, and this condition has never changed materially. Her facial expression is somewhat distorted because of protruding teeth. Her eyes have a rather dull expression. She is timid and has always talked and acted much like a child. She is a very agreeable person. Her mother, recognizing the child's deficiencies in her lifetime, made up for what nature had cruelly withheld, by bestowing upon her unfortunate child extraordinary care, affection and attention, and the child responded with fond obedience, readily yielded to instruction in the amenities of life, and so developed a docile personality. While she never went to school, she received some instruction under a tutor at her home and learned to read and write. The record shows without question that she was incapable of transacting business affairs, and this accounts for the provision in the will requiring the share of

Susie in all money and property of the mother's estate to be paid to W. L. Ryan who *"shall manage and control the same for and on behalf of said Susie Turner * * * and that he disburse the proceeds and income therefrom and act for her * * * in any division of the property made under the provisions of this will."* (Italics supplied.) Mr. Ryan was intimately acquainted with the members of the Turner family. Mrs. Turner had received an injury before her death and for several months was confined to her home and W. L. Ryan in attending to her business and legal affairs was frequently in her home, and because of this intimate acquaintance, and also because he was a young man and Mrs. Turner realized that Susie would always need assistance, he was selected to act as trustee for Susie to receive and disburse her share of her mother's estate.

**▮▮▮** The evident intent and purpose of the will in this respect was, insofar as legally possible, to confer upon the trustee duties analogous to those of a legal guardian. The attorney who prepared the will no doubt had in mind that a testamentary guardianship of the person is unknown to our law. In re Guardianship of Johnson, 87 Iowa 130, 54 N. W. 69. The will was duly admitted to probate, appointment of Mr. Merrill as executor and trustee of the estate property was confirmed, and the nomination and appointment of W. L. Ryan as trustee for the share of the beneficiary, Susie P. Turner, was likewise confirmed. These officers qualified and entered upon the discharge of their duties.

The record shows that Mr. Ryan immediately assumed this rather unusual and not altogether pleasant task of acting not only as trustee of her property, but also *in loco parentis* or quasi guardian of the person of this unfortunate child, then about 27 years of age, and continued to give the matter his personal attention, looking after her every want with a spirit that we think was commendable, apparently in every way endeavoring to do exactly as the testatrix in the last paragraph of her will had admonished him to do. She had always had her mother and servants to look after her at home. Mr. Ryan employed persons to live with her and devote their entire time and attention to caring for her. He took her to California soon after her mother's death, and with some of her money purchased a home, and she and her companion, Mrs. Feussle, have lived there ever since. He arranged a checking account in a bank out there and deposited money which could be checked out by Mrs. Feussle for their

use. He furnished them money to visit the World's Fair in Chicago, and they took a trip to Europe, went to Alaska, and lived for a time in Haiti. He purchased automobiles and other articles necessary for her comfort, paying for the same out of the funds in his hands as her trustee, which was strictly in accordance with the intention of the testatrix, as he construed the will.

He made frequent reports to the court of his administration of the trust property, and with meticulous care filed applications and obtained orders authorizing him to make expenditures from time to time of the trust funds in behalf of the cestui que trust. His every act in the management of the estate was authorized by the probate court. The orders were obtained ex parte in probate over the entire period. The annual reports were forwarded to the beneficiary and those in evidence bear her signature waiving notice and approving the statements of account, although we doubt whether she understood very much about them. As far as the record reveals, notwithstanding the fact that Susie's mental condition was such as to make her a fit subject for guardianship, neither her sister nor any of her friends, nor this trustee or the judges of the court who granted the orders, apparently ever suggested the appointment of a guardian, or any other or different arrangement than that provided for by the terms of the will, which was being carried out in the way and manner heretofore indicated. In fact, as long as the trustee under the will was acting in good faith, and the relationship between the interested parties was agreeable, there would be little necessity for the appointment of another officer of the court to take charge of her person. Insofar as the property was concerned, its management and distribution were fully and completely provided for by the terms of the will, and the appointment of the trustee, who was required to act under the orders of the court, was for all essential purposes and in legal effect identical with that of a guardianship of the property. Insofar as the personal custody of the beneficiary is concerned, the trustee would be powerless, unless his actions were agreeable to the beneficiary or those who might interest themselves in her personal welfare.

There was no friction between the parties until 1934 and 1935. During the depression the income decreased, and the trustee, seeking to economize, decided to bring Susie Turner back to Iowa to live temporarily, in the meantime renting the property in California, thereby enabling him to better hold on to the

shortening purse strings. In 1934, the Buick car with which Susie and her companion were furnished was about ready to be traded in, and the trustee obtained an order of court authorizing him to purchase a new Pontiac car, for the purpose of making the trip to California to bring back Susie and Mrs. Feussle. He drove out to California, taking his wife, his son and nephew. When he arrived there, some disagreement developed between Mrs. Feussle and the trustee, the record is not very definite as to just what took place. Mr. Ryan testified that he fixed up the Buick car by expending about $50 for repairs, and had the understanding with the two women that they would come back to Iowa in the Buick car later on. Mr. Ryan and his party returned home in the Pontiac. He then made a trip to Excelsior Springs for the avowed purpose of seeing about accommodations, rentals, etc., with a view of perhaps arranging for Susie and her companion to live there, if necessary. He drove the Pontiac car on this trip, his wife accompanying him. Susie and her companion did not return to Iowa as the trustee had expected.

Also on his first trip he was sued for a dental bill of $580 which had accumulated, and there was difficulty about this. Also, Mrs. Feussle had filed in the California court a petition for guardianship of Susie. Mr. Ryan intervened, asking that he be appointed. He was required to procure the assistance of counsel and expend considerable money while out there in this litigation and attempting to adjust the dental bill, all of which resulted in little benefit, and piled up additional expense. The trial court in California dismissed the guardianship matter, stating that there was no necessity for appointing anybody.

Again in 1935 the trustee filed an application in which he made some allegations derogatory to the conduct of Mrs. Feussle, the substance of which was that she was interfering with his management of the beneficiary and her business, and poisoning her mind against him and not making proper expenditure of her funds, and he asked the court for authority to go to California to look after his interests as trustee and to discharge Mrs. Feussle and employ someone in her stead. This authority was granted. Accordingly the trustee, Mr. Ryan, accompanied by his wife and nephew, and another lady, drove through to California. This time Mrs. Feussle, according to the testimony, secreted Susie and the trustee was unable to speak with her, and was therefore

compelled to return to Iowa again without results, bringing the Pontiac car and his party back home.

In order to buy the car and pay the expense of the trips to California and meet some other obligations of the trust, it was necessary for the trustee, in 1934, to borrow $2,500. In 1935 he made application for authority to borrow $1,500 on the California property. This precipitated the litigation between Susie P. Turner and her trustee. Attorney Woodbridge of Des Moines was employed to represent her and he filed an application in the trusteeship matter, contesting the trustee's right of personal custody of Miss Turner. He resisted the application for an order to borrow $1,500 on the California property, and asked the court to cancel the order authorizing the same. He set up the purchase of the Pontiac car and expense incurred in the trips to California, totaling $1,707.37, as wholly unnecessary and improper, and asked the trustee to account therefor, and demanded an order of court directing the trustee to strictly carry out his duties and pay the net income to the cestui que trust as directed by the will, and to cease to act or attempt to act as her personal guardian or interfere in her personal affairs, and to make report of his doings. Pending the hearing on this matter on September 9, 1935, the former order authorizing the trustee to borrow the $1,500 was suspended. The trustee appeared and filed resistance to this application, and asked that he be appointed guardian of the person of Susie P. Turner and also of any property or property rights which she might own, not granted to said trustee by the will of Mary A. Turner; and asked that his former acts herein be approved and confirmed and that the guardianship and trusteeship be hereafter consolidated in him, and that his bond be modified to cover his liability as guardian as well as trustee. Susie P. Turner made a special appearance to that part of the resistance asking for the appointment of a guardian, attacking the jurisdiction of the court because no notice had been served upon her in this state.

In the meantime the trustee filed his report covering two years ending September 30, 1935, and to this report Susie P. Turner filed objections, asking for the removal and discharge of the trustee and the appointment of another trustee, and setting forth what were claimed to be certain improvident expenditures of the beneficiary's trust fund, especially objecting to the purchase of the Pontiac car, the expense occasioned by the trips to

California, asking that these be re-charged to the trustee. To these objections the trustee filed a reply, in which he sought to justify the expenditures set forth in his report. The court sustained the special appearance and thereafter Susie P. Turner filed motion to strike the trustee's application for appointment of a guardian of the property of Susie P. Turner because of misjoinder of causes of action, that being a matter in probate and the proceeding before the court on objections to the report being in equity, which motion was sustained.

In the meantime, Edmund Nichols, former judge of the Fifth District of Iowa, now residing in Pasadena, California, was by the California court duly and regularly appointed guardian of the person of Susie P. Turner. Nichols as such guardian filed an application in the proceeding in Polk County, Iowa, in which he asked that the trustee be required to make payment of the net income from the property held by said Ryan in trust to said guardian, at such times as such trustee may have funds available. To this application a resistance was filed by the trustee. There was also a separate proceeding instituted by the appellee, Marion D. Woods, successor to Samuel Merrill, who was a trustee of certain property under the will of Mary A. Turner, in which he alleged that a dispute had arisen as to the application of the rents and profits collected by him from the specific property which by the terms of the will was not to be sold. (See Item Three of the will.) The question to be determined and about which there had arisen some doubts, being whether these proceeds from this specific property should be by said Woods as trustee paid direct to the cestui que trust or to Mr. Ryan as her trustee. This case was heard separately and a separate record made.

There was also filed in the trusteeship matter an application by F. G. Ryan as attorney for W. L. Ryan, trustee, for allowance of attorney fees, to which Susie P. Turner and her guardian appeared and made objections. There were four separate decrees rendered by the court, and appeals and cross-appeals taken as to all four of these decrees as to all matters determined adversely to the parties appealing. On August 7, 1936, this court entered its order consolidating all these separate appeals in these various matters, and they are presented here under one abstract, and we are deciding all questions by this opinion.

In substance the matters determined by the court are as follows:

■■■  I.  On April 8, 1936, on the application of the guardian of Susie P. Turner asking for an order directing W. L. Ryan, trustee, to pay the net income received by him direct to the guardian, the court found that Edmund Nichols was duly appointed by the Superior Court of the State of California in and for Los Angeles County, and was the qualified and acting guardian of the person of Susie P. Turner and of the net income payable to her from the estate of her mother, and had given a sufficient bond, and ordered the net income now in or that may come into the hands of W. L. Ryan, as trustee, to be paid by W. L. Ryan to said Edmund Nichols, guardian, and that upon such payment W. L. Ryan should be discharged from any and all liability for or on account of such net income or its disbursement, and decreed that such payment would be a disbursement by W. L. Ryan, trustee of such income under the will of Mary A. Turner.

The point made by W. L. Ryan, trustee, on this issue is that the California court acquired no jurisdiction and had no authority to appoint a guardian of the person of Susie P. Turner for the reason that since she was an incompetent from her birth the domicile of her parents in Des Moines, Iowa, would still be the domicile of Susie, citing the case, In re Estate of Jones, 192 Iowa 78, 182 N. W. 227, 16 A. L. R. 1286. The words "domicile" and "residence" are not always synonymous at law, nor are they convertible terms. Ludlow, Clark & Co. v. Szold, 90 Iowa 175, 57 N. W. 676. A person may have his residence in one place, while his domicile is in another. In re Estate of Titterington, 130 Iowa 356, 106 N. W. 761. The difficulty with the trustee-Ryan's contention is that the record fails to show that Susie P. Turner is an idiot or imbecile, or that she was ever adjudged so. The record shows he sent his annual reports to her and that she signed a waiver and joined with him in asking their approval. The only home she has is that which was purchased for her by this trustee some 25 years ago, in Pasadena, California, where she has resided all this time. At the time she was taken there she was an adult. There is no evidence that this was a temporary sojourn in California or that she ever intended to return to Iowa to live and make her home. The record of the appointment of Edmund Nichols as guardian of her person and of the net

income payable to her was introduced in evidence. Judge Nichols testified that former residents of Des Moines, old acquaintances of the Turner family, solicited him to act in the capacity of guardian. His appointment is regular in every respect. That she was a fit subject for guardianship is undeniable. W. L. Ryan, trustee, has been paying this money belonging to Susie to her through her companion, Mrs. Feussle. It is now to be paid by him to Susie through her regularly appointed guardian. We see nothing irregular or contrary to law in this, and the action of the trial court as to this issue must be approved.

II. On April 9, 1936, a decree was entered in which the trial court passed on the objections to the report of W. L. Ryan, trustee. The court sustained the special appearance made by Susie P. Turner to the resistance of W. L. Ryan, trustee, wherein he asked to be appointed guardian of the person of Susie P. Turner, and likewise sustained the motion to strike the application of said trustee for the appointment of a guardian of the property of Susie P. Turner; the court further decreed that the objections to certain items of expenses be sustained in part, and that W. L. Ryan, trustee, be charged with the purchase price of the Pontiac sedan in the sum of $916.27, together with interest thereon at 5% from August 13, 1934, and $60.74 repairs and $10 expense of trip to Excelsior Springs, Missouri, and overruled as to all other matters, and as so modified approved the report, allowed the trustee compensation of $600 a year for the two years covered by said report and granted the said W. L. Ryan, trustee, authority to file an application at law for appointment of guardian of the property of Susie P. Turner, and declined to remove W. L. Ryan as trustee.

No notice having been served upon Susie P. Turner in this state of the application of W. L. Ryan for appointment as guardian of the person of Susie P. Turner, the court was clearly right in sustaining the special appearance. The same must be said of the court's order in sustaining the motion to strike the application of W. L. Ryan, trustee, for the appointment of himself as guardian of her property, on the ground of misjoinder of causes of action. As we understand the record, the controversy over the improvident expenditure of funds finally simmered down to the expenditures on the two trips to California. The court found that part of these expenses could be attributed to services rendered by the trustee in relation to trust matters in looking after

matters in California connected with his duties as trustee. It would serve no useful purpose to review the evidence touching this question. We have carefully considered the entire record and conclude that the court's findings have ample support in the record. The court attempted to sift the wheat from the chaff and we see no occasion for disturbing the court's judgment in regard to this matter.

■■■ The matter of compensation of the trustee and his attorney rests largely in the discretion of the trial court. The rule is well stated in the case of Booth v. Bradford, 114 Iowa 562, 572, 87 N. W. 685, 688, wherein Justice Deemer, speaking for the court, said:

''Generally speaking, a trustee who neglects his duties, who is guilty of bad faith, or who violates his obligations, forfeits his right to compensation and to interest. [Citing cases.] But this is not an inflexible rule. If the irregularities complained of are trivial, or have done no harm, compensation may be allowed. Myers' Appeal, 62 Pa. 104. And the allowance of compensation in any case rests in the sound discretion of the court. [Citing cases.] Each case must be determined largely on its own peculiar facts, due weight being given by the appellate court to the findings of the lower tribunal. If we were satisfied that defendant was guilty of actual fraud or that he was guilty of intentional bad faith, no compensation for services or interest allowance would be made. But we are not so satisfied.''

The rule thus announced is applicable to the situation here. There is no claim that the trustee has not accounted for every penny he ever received, throughout the quarter of a century he has served as trustee, or that he was actuated by bad faith or dishonest purposes in anything he did, except the intimation that the trip to California was a pleasure trip for himself and family, and the trial court disallowed the major portion of this expense, including the cost of the automobile and surcharged it to the trustee. The compensation allowed was no more than had been allowed for previous years where no extraordinary services were included. If there was anything in the record pointing to the fact that the court had allowed compensation for all the time the trustee spent in California, there would be room for complaint.

The case of In re Drake's Will, 195 Minn. 464, 263 N. W. 439, 441, 101 A. L. R. 801, involved a similar situation where a

portion of the services were held to be improper and profligate, and the court refused to disallow the trustee's claim in its entirety, but separated the good from the bad, and made the allowance accordingly. The court in that case said:

"It is urged that the entire amount charged as trustee's fees should have been disallowed. It is true that where a trustee has been guilty of fraud, bad faith, or inexcusable negligence, and thereby has caused loss to the trust estate, he should not be allowed compensation. The facts in this case do not bring it within that rule."

While the amount allowed the trustee may be more than some other trial court under the same circumstances would have allowed, yet the trial court must be clothed with a large discretion in matters of this kind, and if we are to give the due allowance to the findings of the trial court who has seen and heard the witnesses, and permit the exercise on the part of the trial court of a reasonable degree of discretion, we see nothing in this record to warrant us in interfering with the allowance made by the court.

III. In the action for the construction of the will, on June 23, 1936, the court decreed that under the will, Marion D. Woods, trustee, was required to pay to W. L. Ryan, trustee for Susie P. Turner, one-half of the net income from Lots 5 and 6, Block B, Commissioner's Addition to Des Moines, Iowa, and also ordered and decreed that W. L. Ryan, trustee, be directed from the amount he receives from Marion D. Woods, trustee, to pay all taxes now due and delinquent and payable on the property of Susie P. Turner in Polk County, Iowa, and Los Angeles County, California, together with any income tax now due and pay any balance thereafter remaining in his hands from the amount received from Marion D. Woods, trustee, to Edmund Nichols, guardian for Susie P. Turner, and further ordered and decreed that payments hereafter received by W. L. Ryan, trustee for Susie P. Turner, from funds which have subsequently hereto accrued in the hands of Marion D. Woods, trustee, shall be paid by said W. L. Ryan to Edmund Nichols, guardian of Susie P. Turner, subject to the further orders of this court.

The will plainly provides that W. L. Ryan is appointed trustee for all property to which Susie Turner shall be entitled under the provisions of the will and directs that such property

shall be delivered to him in trust for said Susie P. Turner. He is required to receipt for the same, and after he gets it, it is to be managed and controlled, under the direction and approval of the district court of Polk county, Iowa, for and on behalf of said Susie P. Turner, and he is directed to disburse the proceeds and income therefrom, and he is also to act for her in any division of the property. It appears that there has heretofore been a division between the two children of some of the property, and Susie's share of that property has been managed and controlled and the rents therefrom collected by Mr. Ryan as trustee. Certainly he would have a right, and the court was right in so ordering, to pay the taxes on her property and pay her income tax and taxes on her property in California from the money he receives. That was a part of his duty in disbursing the funds. It was the contention of the guardian, Mr. Nichols, that the money collected by Marion D. Woods, trustee, on Lots 5 and 6 should be paid direct to him. We do not think the will will bear such construction. The court was right in the construction placed upon the will, and the judgment of the trial court as to this issue must stand approved.

■■■ IV. In a separate decree entered on the 20th day of July, 1936, the court passed on the application of F. G. Ryan, for attorney fees and objections thereto on the part of Susie P. Turner, and Edmund Nichols, her guardian, and decreed that F. G. Ryan be allowed the sum of $350 in full compensation for extraordinary services rendered W. L. Ryan, trustee to the date of said decree and ordered the same to be paid from any funds available for such purpose.

The record shows that F. G. Ryan was employed to act as attorney in resisting the application of Susie P. Turner, wherein she asked not only for the accounting and surcharging of certain items of expense to the trustee, but also asked that the trustee be removed, and was also employed as attorney for said trustee in connection with the application of the guardian of Susie P. Turner wherein she asked that said funds be turned over directly to her, and also represented the trustee on the application of Marion D. Woods, trustee, for construction of the will. These matters were all interwoven. The attorney designates his claim as a claim for extraordinary services. He itemizes the time spent as follows: (1) On Application to set aside orders and for removal of trustee, for time spent on authorities, brief, etc., 20¾

days, time on trial, 2 5/6 days or a total of 23 7/12 days. (2) On Application of Edmund Nichols for delivery of funds, two days on authorities and half day on trial. (3) On Application of Marion D. Woods, trustee, for construction of the will, 9 9/12 days on authorities and brief, and one day on trial, making a total of 36 10/12 days. All the evidence offered as to value of the services rendered was the testimony of A. E. Mahan that for matters in preparation and briefing of authorities the usual charge was $25 per day and for time consumed in the trial, $50 per day. Measured by this standard, the services rendered would be of a value of over $1,000. The trial court cut this to $350. Both sides have appealed, the attorney contending that the allowance is too small, the objector contending that no allowance should have been made because the services rendered were in connection with the issues which were decided against the trustee. The objector bases his contention on the rule that where the beneficiary is successful in a suit against the trustee that the trustee should bear his own expense, which is the usual and ordinary penalty of any loser in a lawsuit, and he cites In re Drake's Will, supra, wherein the Minnesota court said:

"To say to a trust beneficiary that, even if he succeeds in having his trustee's account surcharged to the amount of $2,500 he must nevertheless pay the trustee's attorneys' fees and the trustee's fees for contesting the allowance of such a surcharge, is unreasonable. In effect it amounts to this: That a beneficiary, who has cause to have the account of his trustee surcharged in a substantial amount, can be called upon by the trustee to face the prospect that, if he wants to litigate the question of the trustee's liability, he will have to pay not only his own but the trustee's attorneys' fees and the trustee's fees for contesting the claim, even if the beneficiary succeeds in the action."

And in that case the court refused to allow for services of the trustee and his attorney for conducting the defense as to the items surcharged against the trustee. See also Booth v. Bradford, supra, wherein this court said: "For his fault in defending the suit defendant (the trustee) must pay the ordinary and usual penalty, to wit: costs and his attorneys' fees."

While the trustee was himself an attorney, he was also a necessary witness. Practically all of the evidence introduced and much of the time taken in the trial had a bearing on the

issue of whether or not he should be removed as trustee. It is not only the right of a testamentary trustee or executor, but it is the duty of such trustee or executor upon whom a responsible obligation has been placed by the testatrix, to resist efforts made to thwart the intent of the decedent, and on this issue alone the sum of $350 awarded by the court as attorneys' fees would not be considered excessive. While there is nothing in the record to show what was in the mind of the trial court in making this allowance of attorneys' fees, we must assume in the absence of anything to the contrary that the trial court eliminated all services in connection with the items that were surcharged against the trustee, and in the fixing of these attorney fees the same rule with reference to the discretion lodged in the trial court, which has heretofore been referred to in connection with the allowance of compensation to the trustee, is fully applicable and controlling. We decline to interfere with the trial court's judgment as to this matter.

The record presented some rather trying and embarrassing situations to the trial court. We are satisfied that the various judgments and decrees of the court come as near approximating what is right and proper under the provisions of the will and the law applicable as was possible. In an endeavor to avoid future complications the court in a separate order, which is not appealed from, provided ''that any application hereafter filed in this court by W. L. Ryan, trustee, for authority of such trustee to make expenditures of funds now in or hereafter coming into his hands as such trustee, or to secure, or make loans of such funds, or to place mortgages or other liens on or against the properties in his care and custody as trustee, or reports of trustee, shall be served on C. Woodbridge, as attorney for Susie P. Turner and Edmund Nichols, guardian of Susie P. Turner,'' etc.—Affirmed.

RICHARDS, C. J., and ANDERSON, STIGER, MITCHELL, and KINTZINGER, JJ., concur.