**Baby Boy "Guber" PATTEN, by his Parent and Next Friend, Larry D. Patten, Appellant,**

v.

**Mary Roberta PATRICK, Appellee.**

No. 61736.

Supreme Court of Iowa.

March 21, 1979.

Lowell H. Forte of Terpstra, Wilkinson & Van Horne, Cedar Rapids, for appellant.

L. Vern Robinson, Iowa City, for appellee.

Emmit J. George, Jr., Iowa City, for minor child.

Considered by REYNOLDSON, C. J., and REES, McCORMICK, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

This is a child custody case in which both the natural father, Larry D. Patten, and the legal guardian and maternal grandmother, Mary Roberta Patrick (Roberta), desire custody of Baby Boy Patten, who is also known as "Guber" and Patrick. In Larry's absence Roberta was appointed Patrick's legal guardian. Upon Larry's subsequent effort to regain custody, the trial court left custody with the grandmother, subject to visitation by the father. We modify and affirm.

Patrick was born April 11, 1971 to the marriage of Larry and Mary Elizabeth, the daughter of Roberta. He lived with his parents for approximately one year before they separated. Patrick then lived with his mother. Later the child lived for about three months with Larry and another woman in Burlington in early 1973. At that time, Larry became involved in a felonious truck hijacking incident in which he was paid to aid in unloading merchandise from a stolen supply truck. Subsequently, he learned that federal law enforcement officers were looking for him. Accompanied by another person involved in the crime, Larry fled the state.

Larry left Patrick in Burlington with the woman with whom he had been living and gave her instructions to "take good care of" the child until Larry could return. The woman had no apparent source of income; she was neither employed nor receiving public assistance. After a short time, the mother, Mary Elizabeth, brought Patrick to Iowa City to live with Roberta. Mary Elizabeth had neither the finances nor the desire to cope with the care of a child. Roberta, however, provided a good home for the boy.

On November 9, 1973 in equity no. 1449 Mary Elizabeth filed a petition for dissolution of marriage in Johnson County district court. The petition asked for custody of the child.

On November 20, 1973 in the same court in probate no. 14979 she joined with Roberta in a petition for appointment of Roberta as guardian of Patrick. The petition alleged Roberta had the care, custody and control of the proposed minor ward. An order entered the same day appointed Roberta as guardian. No notice of the proceeding was afforded Larry. The order noted "the whereabouts of the proposed ward's father is unknown."

After seven months of flight, Larry was apprehended in Colorado, returned to Iowa for trial, and found guilty of the federal hijacking charge. He was sentenced to three years in prison and placed on probation.

In February 1974, Larry returned to Iowa City and moved into Roberta's home. Although the child continued to live in the grandmother's home, Larry claims he did not discover the guardianship had been established until April or May 1974. By that time Larry had moved into a boarding house and Mary Elizabeth was planning to leave for New Mexico.

Throughout the period of her guardianship Roberta has permitted Larry regular visitation with his son, although there was no court order on visitation in effect.

By counsel, Larry filed a counterclaim in the dissolution case on December 5, 1975 stating the child was "not affected by the controversy inasmuch as the custody and guardianship of said minor has been previously determined by Order of this court dated November 20, 1973."

A written stipulation filed December 12 in the dissolution action by Larry and Mary Elizabeth stated no provision for custody of the child would be made because of the guardianship.

Larry appeared in court, proved up on his counterclaim and obtained a dissolution decree, filed December 19, 1975, which stated:

THE COURT FURTHER FINDS that inasmuch as the custody and guardianship of the Parties' minor child, Guber Patten, has been previously determined by Order of this Court dated November

20, 1973, and the guardian not appearing nor being a party of this action, the Court makes no findings or decree concerning the custody and support of said minor child; . . .

Thereafter, Larry remarried and has attempted to obtain custody of Patrick. On August 31, 1976, Larry filed a petition to terminate the guardianship pursuant to section 633.675(4), The Code 1975, and an application for modification of the dissolution decree. After consolidated trial, the court granted Larry visitation with the child but otherwise denied both the petition and the application.

Larry appeals denial of his petition and application and Roberta cross-appeals the visitation terms.

The parties present the following issues for review:

(1) Whether the guardianship proceedings conducted without notice to the father violate due process and equal protection;

(2) Whether the continuation of the guardianship and custody in the grandmother is in the best interests of the minor child; and

(3) Whether the provision giving visitation rights to the father every weekend during the summer should be modified.

■ The scope of our review is de novo in the guardianship proceeding and the dissolution modification action, both of which are in equity. Iowa R.App.P. 4; *Matter of Guardianship of Sams*, 256 N.W.2d 570, 572 (Iowa 1977).

I. *The constitutional attacks on the guardianship proceedings.* Larry contends the guardianship proceedings denied him due process and equal protection of the law in failing to include notice to him of the filing of the guardianship petition. If we determine the guardianship proceedings were violative of due process or equal protection, the proceedings must be held not binding on Larry.

A. *The due process attack.* The petition for appointment of Roberta as guardian for Patrick was filed under section 633.552.

Relating to notice when a minor is the proposed ward, section 633.553 provides:

No notice of the filing of such petition need be given when the proposed ward is a minor and such petition is filed by the person having custody of the proposed ward.

Section 633.554, which otherwise applies, states:

In all other cases, notice of the filing of such petition, shall be served upon the proposed award in the manner of an original notice and the Rules of Civil Procedure governing original notices shall also govern such notice as to content.

Chapter 633 makes no provision for notice of guardianship proceedings to the natural parent of a minor child under the facts of the present case. Therefore, we must determine the constitutional due process rights applicable to Larry, as a parent.

Due process analysis is composed of a two-step inquiry: Does due process apply? What process is due? *See Mathews v. Eldridge*, 424 U.S. 319, 332–333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 31–32 (1976). The two-step analytic framework may be applied in a variety of circumstances to determine the requisite due process rights. In applying it to initiation of guardianship proceedings, therefore, we turn, first, to a determination of whether due process applies, and next to a determination of what process is due.

The right of parents to the custody of their children was acknowledged in *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), where the Supreme Court reviewed the impact of the full faith and credit doctrine on an ex parte divorce decree awarding custody of children to their father. Although *May* was not purely a due process case, the court acknowledged that parental right to custody of their children "is a personal right entitled to at least as much protection as [the] right of alimony." *Id.* at 534, 73 S.Ct. at 843, 97 L.Ed. at 1227.

Subsequently, in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court made clear that

court appointment of guardians to remove children from the care of unwed fathers required that due process protection be extended before parental rights were extinguished. *Id.* at 649, 92 S.Ct. at 1211, 31 L.Ed.2d at 557.

Stanley has been applied in this jurisdiction to the context of adoption in *Catholic Charities of the Archdiocese of Dubuque v. Zalesky*, 232 N.W.2d 539 (Iowa 1975). In *Catholic Charities* we held that a putative, known father must be accorded:

> opportunity to show he has significantly provided for the wants of his child and is ready, willing and able to thus provide for future wants of said child before a court can effectively terminate his parental rights. *Id.* at 546.

The application of the *Stanley* due process guaranties to the guardianship context was presented in *Matter of Guardianship of Sams.* In *Sams*, however, this issue had not been presented in the trial court and we did not entertain the issue on appeal. 256 N.W.2d at 572.

In 39 *C.J.S. Guardian & Ward* § 23 at 52–53 we find the following discussion of the parental due process rights in a guardianship proceeding:

> Statutes usually require that notice of an application for the appointment of a guardian be given to the parents of the infant. Even in the absence of an express provision requiring notice, it has been held that due process mandates that notice be given to the parents. . . .
>
> . . . . . . .
>
> . . . An order appointing a guardian, without due notice to the father or mother of the infant, may be attacked by the parent by petition or other proceeding in the court by which such order was made.

An examination of case law confirms that in many jurisdictions the right of notice of the natural parents upon petition for a guardian for their children has been upheld. In some cases the right to notice of guardianship proceedings rests upon statutory requirement and is regarded as a jurisdiction-al prerequisite. Cf. *In Interest of Hewitt*, 272 N.W.2d 852, 855 (Iowa 1978) (jurisdictional requirement of notice in child neglect and dependency proceedings). However, it has been held that the right to notice and hearing is constitutionally based. *Ex parte Englebert*, 70 S.D. 467, 18 N.W.2d 794, 795 (1945); *Daugherty v. Nelson*, 241 Mo.App. 121, 234 S.W.2d 353, 362 (1950); *Bioni v. Haselton*, 99 Vt. 453, 134 A. 606, 608 (1926); *Sinquefield v. Valentine*, 159 Miss. 144, 132 So. 81, 83 (1931); *Britt v. Allred*, 199 Miss. 786, 25 So.2d 711, 712 (1946); *see Clarke v. Lyon*, 82 Neb. 625, 118 N.W. 472, 474 (1908).

We share the view of the weight of authority and hold that a natural parent is entitled to due process where a petition for guardianship of the minor child is filed.

Although we hold that parental due process applies to guardianship proceedings, the inquiry of what process is due remains. Larry contends he was entitled to notice and opportunity to be heard prior to entry of the order appointing guardianship. However, due process does not always guarantee persons the right to be heard *prior* to a constitutionally protected deprivation. In many circumstances this right may be afforded subsequent to the disputed action.

In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the Supreme Court restated the three factors long considered to constitute the analytic framework for determining the procedural safeguards required by due process. The analysis requires consideration of:

> [F]irst, the private interest that will be affected . . . ; second, the risk of an erroneous deprivation of such interest . . . and the probable value, if any, of additional or substitute procedural safeguards; and finally the (state) interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 675, 97 S.Ct. at 1414–15, 51 L.Ed.2d at 733, citing to *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

Application of the three factors by this court to determine procedural due process requirements, apparently, occurred in *Catholic Charities* where we decided the interest in protecting the confidentiality of adoption proceedings and the privacy of unwed mothers outweighed the interest of putative fathers in receiving notice and opportunity for hearing prior to adoption proceedings. 232 N.W.2d at 548–549.

Evaluation of the three factors as applied to the facts of the present case leads to a similar conclusion that no prior notice and hearing were required. The *private interest* of the father is one of substantial weight. Unlike the unknowns of *Catholic Charities*, Larry Patten was a father who was both identifiable and legally married to the child's mother. However, there existed little *risk of erroneous deprivation.* Larry had left the state in flight from the FBI. He had, at least temporarily, relinquished custody and control. Attempts to provide notice of guardianship proceedings to a fugitive from justice may have been an "exercise in futility" equal to that of notification of an unknown putative father contemplated in *Catholic Charities,* 232 N.W.2d at 548. Even if Larry had been afforded notice and returned, he could not provide a home for the child at that time in the face of the probability of apprehension by the authorities. Finally, the *state interest* lay with providing for the care of the child in the immediate future. Since the mother did not seek custody, Larry's absence made it necessary for the court to take some steps to assign legal responsibility for the child. These interests must outweigh the private interest of the father, whose own flight from justice rendered actual notice improbable and whose own absence precipitated the need to provide alternative care for the child.

In weighing these three factors and determining the procedural safeguards applicable to various factual situations, the Supreme Court has often held that hearing subsequent to deprivation of a constitutionally protected interest satisfies due process. In summarizing the applicable case law, the Court said:

In recent years this Court increasingly has had occasion to consider the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter. In only one case, *Goldberg v. Kelly,* 397 U.S. [254], at 266–271, 90 S.Ct. [1011], at 1019–1022, 25 L.Ed.2d 287, has the Court held that a hearing closely approximating a judicial trial is necessary. In other cases requiring some type of pretermination hearing as a matter of constitutional right the Court has spoken sparingly about the requisite procedures. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), involving garnishment of wages, was entirely silent on the matter. In *Fuentes v. Shevin,* 407 U.S. [67], at 96–97, 92 S.Ct. [1983], at 2002–2003, 32 L.Ed.2d 556, the Court said only that in a replevin suit between two private parties the initial determination required something more than an ex parte proceeding before a court clerk. Similarly, *Bell v. Burson, supra,* [402 U.S. 535], at 540, 91 S.Ct. [1586], at 1590, 29 L.Ed.2d 90, held in the context of the revocation of a state-granted driver's license, that due process required only that the prerevocation hearing involve a probable-cause determination as to the fault of the licensee, noting that the hearing "need not take the form of a full adjudication of the question of liability." See also *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). More recently, in *Arnett v. Kennedy, supra* [416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15], we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided. 416 U.S., at 142–146, 94 S.Ct., at 1638–1640, 40 L.Ed.2d 15.

These decisions underscore the truism that " '[d]ue process', unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

*Mathews v. Eldridge,* 424 U.S. at 333–334, 96 S.Ct. at 902, 47 L.Ed.2d at 32–33.

In *In re Lundberg,* 143 Cal. 402, 77 P. 156 (1904), the California court refused to invalidate guardianship proceedings on the basis of lack of notice to the natural mother of the proposed ward. Although the *Lundberg* court ruled without benefit of the subsequently developed body of due process law, the principles urged therein are still supported by sound reasoning. Where the father died and the mother deserted the minor child prior to initiation of guardianship proceedings, no notice was afforded the mother. In rebuffing a constitutional attack on the proceedings the court said:

> The safety and welfare of such a child might absolutely require the appointment of some legal custodian, and yet, if actual notice to the parent were a prerequisite in such cases, no appointment could be legally made. The safety and welfare of the child being the first consideration, the rights of the parent are of such a nature that they must yield to such reasonable regulations as to notice as the legislature may prescribe. We have found no case in which this right of the legislature has been denied. Our statutory provisions in this regard cannot justly be said to be unreasonable. Notice to the person having the care of the minor is made essential thereby. In the great majority of cases the minor is in the care of its parents, and in such cases notice to them is therefore essential. Where the child is in the care of some other person, notice to that person will ordinarily come at once to the knowledge of the parents, in the absence of fraud, if the parents have not practically abandoned the child and ceased to make any inquiry in regard thereto. The court to which an application for an order appointing a guardian is made will always make inquiry as to the relatives, and require notice given to them, where the giving of such notice is practicable. If it subsequently develops that a parent has by such proceedings been fraudulently deprived of the custody of his minor child, the order of appointment may be annulled or vacated by appropriate proceedings; and the court having jurisdiction of the guardianship proceedings will always, upon seasonable application by a parent who did not in fact have notice, liberally exercise the discretionary power confided to it, to give the parent full opportunity to be heard upon the question as to the necessity for the appointment of another as guardian. And finally the guardian so appointed may be removed whenever it is no longer proper that the ward should be under guardianship.

77 P. at 159.

As *Lundberg* suggests, the denial of *prior* notice and hearing does not, of course, mean parental rights receive no procedural protection. In circumstances in which the risk of erroneous deprivation is minimal and the state interest is great, however, subsequent hearing satisfies due process.

■ Larry's right to a *subsequent* evidentiary hearing on the guardianship appointment was statutorily insured by section 633.37 which provides:

> *Orders without notice.* All orders entered without notice or appearance are reviewable by the court at any time prior to the entry of the order approving the final report.

This statutory right was pointed out in *Sams,* although the due process issue itself was not ruled on by the court. *See Sams,* 256 N.W.2d at 572.

Having determined Larry's entitlement to due process exists and is sufficiently satisfied by subsequent hearing, we turn to an analysis of the equal protection challenge.

B. *The equal protection attack.* Larry states in his assigned error that the Iowa guardianship statutes as to notice violate as to him the equal protection provisions of the United States and Iowa Constitutions. However, he makes no specific argument in that regard in the text of his brief.

We perceive no unconstitutional discrimination in section 633.553. When sections 633.553 and 633.554 are read together, we believe the notice provisions require notice to *wards* only and do not purport to require notice to other parties.

The literal wording of section 633.-553 states "no notice . . . need be given" under the described circumstances. Section 633.554 serves as a catchall statute and states that "in all other cases, notice . . . shall be served upon the proposed ward." If section 633.553 purported to govern notice of *all* interested parties in the event that the proposed ward is a minor and the petitioner is the custodian of the ward, section 633.554 would fail to address the full range of situations within its scope. Since section 633.554 applies *in all other cases,* interested parties outside the described circumstances of section 633.553 would be governed by section 633.554. Section 633.554, however, makes no provision for notice to anyone other than the proposed ward, himself. There is no reasonable statutory provision for notice to interested parties where either the proposed ward is *not* a minor, or the petition is filed by a person *not* having custody of the proposed ward, or both. We believe, therefore, the more reasonable view is that sections 633.553 and 633.554 govern notice to wards only. Statutory silence on notice to interested parties, including natural parents, leaves their right of notice to the dictates of due process.

Support for the narrow scope of sections 633.553 and 633.554 can be found in commentary. The Bar Committee comment to section 633.553, I.C.A., states that the statute "*codifies present case law* but limits its applicability to the situations in which the applicant already has custody of the minor for whom the guardianship is requested." (Emphasis added.) At the time of the com-

ment no Iowa case law had addressed application of section 633.553 to notice to parties other than the ward himself. Cf. *Turner v. Ryan,* 223 Iowa 191, 272 N.W. 60 (1937) (special appearance properly sustained for failure to serve notice on prospective ward).

That due process dictates notice generally and section 633.553 represents an exception applicable to wards only is further supported by references to Peters, *Conservatorships and Guardianships under the Iowa Probate Code,* 49 Iowa L.Rev. 678, 680 (1964). In reviewing the probate code guardianship provisions Peters states that "notice is the rule and omission of notice the exception." Peters notes section 633.-553 and goes on to state that "the person to be served is almost always the proposed ward."

Since we perceive no discriminatory classification, we turn to a consideration of the merits of this custody dispute.

II. *The custody of the child.* Although Larry petitioned to terminate the guardianship under section 633.675(4), he was, nevertheless, entitled to a review by the court, under section 633.37, of the ex parte order appointing a guardian without notice to Larry. Annual reports had been filed by Roberta as guardian but no final report had been filed or approved. *See Sams,* 256 N.W.2d at 572.

. In the hearing the burden was on Roberta to prove her appointment as guardian was in the best interest of Patrick in view of the rebuttable preference accorded the natural parent, Larry, under section 633.559. *Sams,* 256 N.W.2d at 572.

Despite the recognition of parental preference, we have in some cases refused to return custody to the natural parent. *E. g. Halstead v. Halstead,* 259 Iowa 526, 144 N.W.2d 861 (1966) (mother denied custody when child had been bounced from home to home and had resided in grandparent's home for over ten years).

In our de novo review of the record, we give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

The record shows Larry has been married three times. His first marriage produced one son and ended in divorce. The son was adopted by the present husband of his first wife.

In 1961 and 1962 Larry was convicted of three breaking and entering charges, eventually being committed to the reformatory at Anamosa after probation violations. After serving incarceration and being paroled, he was recommitted for a parole violation.

Mary Elizabeth was his second wife and Patrick was their son. They did not give him a first name, preferring to let him name himself when ready. Larry nicknamed the child "Guber." However, when he came to live with Roberta, she has called him Patrick. The boy much prefers the latter name.

Larry has married a third time and his wife is pregnant. They live in a remodeled school house near Iowa City.

Larry last was involved in criminal activity in 1973 and has been released from federal parole on the hijacking associated charge.

At trial, he testified he would not commit another felony unless "it was something really big." He readily admits to smoking marijuana once or twice each week.

Mary Elizabeth, who now lives in New Mexico, did not appear at the hearing, and while concerned about Patrick's welfare, is not seeking custody of him.

In its findings of fact the trial court well summarized the remaining relevant record in stating:

Mary Roberta Patrick is a 61 year old woman who enjoys excellent physical and mental health. She has for the most part been responsible for and provided for the emotional, social, moral, material and educational needs of Patrick since before he was two years old. Her character and stability are outstanding. She possesses the capacity and interest to provide for the emotional, social, moral, material and educational needs of Patrick. Her interpersonal relationship with Patrick is excellent.

Larry D. Patten is a 38 year old man who enjoys good mental and physical health. His character and stability has greatly improved since 1974. His capacity and interest to provide for the emotional, social, moral and educational needs of Patrick has also improved during the course of this period of time, however, although his capacity to provide for the material needs of Patrick has greatly improved over that period of time, his interest in doing so is subject to question in that he has contributed less than $300.00 toward Patrick's support. His interpersonal relationship with Patrick as well as that of his present wife is very good.

Patrick Patten is a physically and mentally healthy six-and-a-half year old boy. He is well adjusted and enjoys the love of his father as well as his grandmother. His emotional, social, moral, material and educational needs are those of a healthy, normal child his age; and thus far have almost entirely been met by Mary Roberta Patrick in a most successful manner.

The evidence presented at time of trial rebuts the presumption favoring Larry D. Patten and reflects that it would presently be in the long-range best interests of Patrick Patten to continue the existing custodial situation as established by the guardianship proceeding. It would not be in his best interests at this time to disrupt the existing custodial status.

■ We agree with the findings and result reached by the trial court. Under the present record, custody of Patrick shall remain in Roberta as guardian subject to visitation with the child by Larry.

III. *Visitation rights of father.* The court ordered that Larry shall have visitation with Patrick at reasonable times and places to be agreed upon by Larry and Roberta, including weekend visitation at Larry's home from Friday evening until Sunday evening every other week until summer vacation from school at which time the visitation shall be every weekend plus two weeks during the summer recess.

Roberta asks that she be allowed to spend some summer weekends with the child. We agree.

■ The trial court ruling is modified in that Larry shall have visitation away from Roberta's home with the minor child, Patrick, from Friday evening until Sunday evening every other weekend starting upon issuance of procedendo, two weeks during the summer vacation from school, and at such other times as may be agreed upon by the parties.

As modified, the trial court rulings are affirmed.

AFFIRMED AS MODIFIED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

In the facts of this case I agree the subsequent hearing satisfied Larry's entitlement to due process. However, I believe notice and hearing must precede the deprivation of custodial rights whenever notice can be given which is reasonably calculated to reach the parent. Before a determination is made that such notice cannot be given, a showing of reasonable diligence to learn the probable whereabouts of the parent should be required.